So the next case is Dickinson v. York. Thank you. I forgot to take this one. May it please the Court. This is a prisoner case in which Mr. Dickinson, while pursuing his grievance, did everything that the regulatory deadlines asked of him. The State Commission, on the other hand, missed its own deadline, the deadline that it wrote for itself in deciding the final — in issuing the final decision at the final step of his appeal. Every single regional circuit to consider this issue has found that under these circumstances, the claim is exhausted, and this Court case can be brought. So is the claim exhausted, or is — are the procedures unavailable because they're not knowable? I guess they're a little different, right? There are two sides of the same coin, Your Honor. So Jones speaks to the completeness requirement. So you have to complete the requirements on the books. And we would say that the — that it was complete. At what point? At the point that the regulatory deadline, the 45-day deadline, has expired. Forty-five days. To the extent that the Court disagrees and says there was something else that could or should have been done by anybody, then we believe, then, that Ross applies, and that the — the regulations were too opaque or confusing under Priyatno, this Court's decision. The regulations didn't contemplate the specific situation that the prisoner was in, and so, therefore, under Ross, they — the claim would be exhausted anyway. That's sort of the overall framework. But why isn't the — I hear both arguments, but why isn't the easier one to say, just focus on exhaustion, on the regulations say 45 days, on day 46, he's done everything he's — he was required to do? That — that is our view, Your Honor, that on the — on the 46th day, he can bring his claim in federal district court. It's the regulations that the State Commission, in this case, wrote for itself, that the deadline is over. He can bring his case. And I think it's only to the extent that the Court were to disagree with that view, and some of the other regional circuits have taken a more, what I'll call, Ross-like approach to this question. That's the reason we put that into the brief as well, so that — that we have sort of both arguments, two sides of the same coin. Alitoso, what do you say about some of these New York State court decisions that talk about the deadlines being aspirational and that they don't deprive the prison authorities from — from, you know, making a decision on day 46? Does that factor into the analysis at all? It shouldn't for at least three reasons. So the first is, in this case, that argument wasn't made, so it's waived. So that — those cases were raised in the States' brief in the Hayes — Hayes case. Right. The second is that those cases, Your Honor, really are about jurisdiction, voidability, enforceability. So those cases are cases where the agency makes a decision, the — the petitioner or prisoner goes in and says, that decision was void, unenforceable, and or the agency lacked — lacked jurisdiction. Under those circumstances, some third department cases have said, the regulatory deadline is directory, not mandatory. And that's not what we're talking about here. No one is saying that the ultimate agency decision that did issue in this case is void, unenforceable, or that somehow lacked jurisdiction. We're not saying any of those things. We're just saying the claim is exhausted. Those cases are not about PLRA. They're about voidability, unenforceability, jurisdiction. Even if somehow somebody were to say that that applied — those cases were to apply in the exhaustion context, it's still — the — the regulations are unavailable under Ross because they're too opaque and confusing. In Priyatno, it was very clear the regulations don't contemplate on their face what the prisoner is supposed to do. The regulations say, shall within 45 days issue a decision. The notion that there are some third department cases out there that talk about directory versus mandatory, that's not in the regulation. And they could have written the regulation that way. They could have said this 45-day period is directory, and we reserve the right to, you know, add infinite and issue a decision whenever we want, but didn't write it that way. I think the — just focusing on — on the Ross issues for — for a second, the — the question that Mr. Dickinson was facing on the 46th day was, what was he supposed to do? The regulations say 45 days.   There's nothing in the regulations that tell him what to do. In this case, the State is going to get up in about 20 minutes and say that the standard to be applied is substantial prejudice. The district court in this case and the defendants in this case are saying the standard is reasonable delay. The district court in this case and the defendants in this case are saying he should have filed an Article 78 proceeding. The State is saying he should have filed a proceeding for mandamus in the State court. And the district court in this case also said that he should have filed a second grievance. None of those things are in the regulations that — that — what — that — what he was looking at on the 46th day. And so, certainly, the — the — under Jones, the process was complete. It was over. But — but if that's not clear, the only other thing that's clear is that the regulations were opaque and confusing as to what he was — Kagan. Could your client have filed a grievance complaining about the, I guess, CP — CRC's failure to respond? I know the argument that this would be inconsistent with Jones to require it, but I'm just sort of curious. Practically speaking, was that a procedure available to him? It — it was not available to him. In this case, he did — I think he did file a second grievance seeking — challenging the delay. Right. But that's a grievance about the delay. Right. It's not a grievance on the underlying merits. So he didn't — so he doesn't have to — the regulations don't contemplate. Under Jones, it's clear. So he doesn't have to file a second grievance. The regulations don't say file a second grievance. But if he did, the claim is exhausted as of — as of the first date, not as of the second date. The — the — I think just addressing some of the issues that are in the district court decision and in the defendant's brief, the defendants principally rely on district court authority in this circuit. I think we set forth in our brief that the district courts are actually split on these issues. I wanted to talk about the uniform a little bit. I mean — I mean, they agreed that your client would get a uniform, right, a two-piece uniform. And they got him a used one and said a new one is coming, right? Yes, Your Honor. And then it didn't come for two months. They said it was going to come. But did your client exhaust with respect to the failure to get him a new uniform? He — he utilized all of the remedies that were available to him. In other words, he filed a grievance. The grievance was granted. The — the relief wasn't forthcoming. Well, no, he got — he got a two-piece uniform, right? Four months afterwards and from — from the time of the first grievance. So there's a difference, perhaps, Your Honor, between the exhaustion and then the merits. So whether or not he exhausted, that's the first question we have to answer. And that question we submit he did exhaust because he did everything that the grievance system required him to do, and there was nothing else for him to do under the grievance system. So now he's exhausted. The second question is, does he get to bring a case on the merits? He does because to the extent that there's damages for the past harm, he gets to bring that case. And there's — And there was unreasonable delay in providing him — I mean, they accepted his grievance. And then they just didn't provide him the uniform. And — and there was an unreasonable period of delay that your client is entitled to damages. And the harm to him that the potential damages that accrued to him during the four-month period, and it was a four-month period where he was essentially, Your Honors, you know, he's already paraplegic, he's already in a wheelchair, and he was half-naked for four months. And he testified at his deposition, that's at A162, 118, and 119, that he suffered emotional distress, pain, and suffering as a result. So he's entitled, because he did everything that the grievance system asked him to do, he's entitled to at least theoretically seek damages for that — for that intervening four-month period. I see that my time is all up. I have two minutes for rebuttal. Thank you. Good morning, Your Honors. May it please the Court, my name is Lorraine Jelinek, and I am counsel for all defendants of Pele's in this case. I won't go over what the each individual defendant's name is, because that would take up all of my time. One thing that I did want to point out, which I thought was worth mentioning from the outset, is that Plaintiff acknowledges the fact that there is a completion requirement that is specified in the PLRA versus these State regulations. He also acknowledges in his reply papers, which I believe appear on page 10, that he contends that there is no completion with respect to the PLR and the State regulations. This belies the well-settled precedent that exhaustion requires compliance and completion. And the completion factor is where a final determination by the State commission in this case would apply. There have been multiple cases that have held that completion of the review process and compliance with the agreement's procedures is what is required in order to exhaust. Now, what happens if the commission just never issues an opinion? Under that theory, there's never completion, and that's completely out of the hands of the prisoner and completely in the hands of the State. Can the State prevent exhaustion by just never issuing a decision? Well, it's not that they would — I don't think that's really an issue here, Your Honor. I think ultimately it's undisputed that the commission did render. Yeah, I know. But we have to deal with the broader question of — Right. — of we have to issue a rule that would apply in this and other cases. So the question is, if the commission never issued a decision, if you take your position to an extreme, the commission could prevent there from ever being completion if completion is viewed — is measured exclusively by whether a decision issues, right? Right. And in that — obviously, that would be an extreme circumstance here. But — But is that — is that the position you're arguing for? That would be the position. But then, you know, you also have to realize the law that is being established within this circuit itself, and there's really a distinction between the PLRA and the interplay between the PLRA and the State regulations. Obviously, the PLRA mandates that exhaustion is required. However, the State regulations and the courts are the ones that defy what actually constitutes exhaustion and what constitutes unavailability. This — a prime example of this is the two Supreme Court cases of Jones and Ross that the plaintiff realized and would actually support defendant's position, that it is the particular jurisdiction's regulations that defy what constitutes this unavailability. That is what — But here — so help me understand this particular case. The Complaint Review Council here, the regulations are pretty clear as I read them. The defendant shall issue a written determination to the appeal within 45 days of receipt. And the decision here — correct me if I'm misremembering the record — but was issued approximately three months from the last — that last date. So what is the — I'm having trouble understanding what a prisoner is supposed to understand himself to do when he does each of those steps, and he has no idea — he or she has no idea when or if there's going to be an answer. Well, that is why — I mean, obviously, we don't want to be unreasonable in this. And since we do realize that exhaustion is a complex issue, but from — if you look at the actual district court decisions — and there's multiple ones that I have listed here — that they actually consider this exact issue, what happens in the event that the state commission does not issue a decision within the 45 days, and they are all establishing this reasonableness of time. And — Yeah, but — I mean, what does that even mean? Like, who establishes what's reasonable? Well, if — It wouldn't be reasonable to say, if the PLRA is designed to simply incorporate and apply the state's regulatory structure, to say, well, what did New York say? Oh, well, New York said 45 days for a decision. But for us to construct a thing saying, well, six months is all right, eight months is all right — well, no, maybe eight months isn't so much. Like, what is the yardstick by which you measure reasonableness? Well, the reasonableness would probably be something that, you know, this court would have the authority to establish at this point. Well, regardless of — what would that rule look like? Let's say we did have authority. We would propose within the case law that has already been established within the district courts that they seem to hover around a one year. And what's the legal authority? Where does that one year come from? It's just what the district courts have been establishing within this jurisdiction itself. There is a case. It's Livingston v. Hocknagle that was just decided in — Yeah, but what's the legal basis? Why a year? What is the source of law that gives us one year? Well, it's — there's no fine — there's no definitive law at this moment, Your Honor. Wouldn't that, almost by definition, then, be so opaque as to be unavailable to a prisoner? I mean, it seems to me that if we can't figure out what is reasonable, I don't know how a prisoner is supposed to figure it out. And that would seem to make it exactly what's contemplated in Ross, is unavailable, right? Well, the Ross factors here — Ross is an example of the court's authority to determine what constitutes unavailability. And I think that is really the predominant issue here. If the courts in this jurisdiction are deciding whether — even if it's unclear at this point what actual time period constitutes unavailability, they seem to be deciding between around this one-year time period that after you reach the one year, then it sort of becomes unavailable to the prisoner, which is something, obviously, to not be unreasonable. But this is a process that has firm deadlines by which a prisoner needs to make grievances and appeal the various parts of the grievance process. There's firm deadlines by which a prisoner must make a grievance, right? There is, correct. And there's firm deadlines by which a prisoner must appeal the denial of a grievance, right? That's correct, yes. But there's this very squishy deadline as to when they get to bring a case to court. That turns on reasonableness, which is about a year. Which is something that, again, would have to be decided to create a definite standard. But I think the point here is that the unavailability is determined by the authority in the particular jurisdiction. And courts — Meaning New York? I mean, when you say the particular jurisdiction, you're saying the Second Circuit? The Second Circuit. So if we had Connecticut — I have no idea what Connecticut's prison system is. But if they have different rules — I don't know. Let's say they have a 90-day deadline. Does our one-year invented deadline apply to them, too? It would be within the jurisdiction. So, yes, Your Honor. But I thought that the whole idea of the PLRA is that it's incorporating the State procedures. It is. It's relying on — So wouldn't it vary by the State's procedures and not whether the different States happen to fall within the same circuit? That's correct. It would — it is determined by the particular — the State regulations. And all the PLRA in itself does is just — establishes this mandatory exhaustion requirement. The rest is dictated by the courts and the State regulations. I mean — Why wouldn't a better approach, reading Jones and Ross, be to say the New York's seem to contemplate pretty clearly that after 45 days, if the prisoner has waited the 45 days, he's done everything that he can do. If New York State would prefer a one-year rule, it can change its regulations. That's correct, Your Honor. That is one avenue which the regulations would change. But also, I think what's important to realize is that this Court today has the authority to mandate that there is this one-year reasonableness of time constituting delay. And that's what constitute — that's what would constitute unavailability in this jurisdiction. It's already been done in Ross. It's already been done in Jones, where there's an example of the courts doing this, the courts interpreting what constitutes unavailability. And that's what I think that the Court today has the opportunity to do. So the State gives itself 45 days, but we'll round it up to a year. That's what you're saying we ought to do. Well, interestingly, in the actual New York State regulations, there is a specific section that deals with this. It appears in — it is Section 701.5d3i. I don't believe that this was cited in the papers, but this actually deals with an instance of when an inmate has not received a decision. And it does actually — it doesn't require, but it also suggests that they are encouraged to follow up if they do not hear within 45 days of filing an appeal to ensure that the appeal was actually received by the State commission. That in itself shows that the State regulations, even the seemingly mandatory language of the shall issue within the 45 days, that in itself shows that this is an — it's not an inflexible standard. The State regulations inherently, although they may — the language itself may seem to contradict itself, there is also a provision here that states that the inmate is encouraged to follow up in writing in the event that there is a delay in any portion of the grievance procedure. It also, with respect to the grievance with the two-piece uniform, there is an implementation of the decisions in this regulation. And I'll quote verbatim, if a decision is not implemented within 45 days, the grievance may appeal to the CORC, the highest — the State commission in this instance, citing lack of implementation as a mitigating circumstance. That did not happen here. It's undisputed that he only followed up with the commission months after he had already commenced the federal action. So these provisions in itself show that the State regulations, although maybe the language may have to be tailored a little bit, they're not inflexible. The courts have the ability, and they have this ability. It's even further supported under the decision of Ross, which vests the Court today to issue a clear one-year, as we would submit, as a suggestion based on the precedent that has been established in this jurisdiction. Thank you, Your Honor. MR. BOUTROUS Just a couple of quick notes. I didn't catch the regulation that my colleague on the other side quickly cited, but I'm not aware of anything in the regulations that has a follow-up requirement that's in the DOCS regulations that has a status check requirement, which my colleagues after me will speak to. To the extent that the Court would benefit from letter briefing or the like on the additional regulation that counsel raised for the first time, I'm happy to provide it. MS. MCCARTHY I think we might. Could I direct that counsel provide a letter by the end of day on Monday specifying the regulations that you referred to in argument, and then two days later, no more than two pages on both sides, just speaking just to those regulations. Is that clear? MR. BOUTROUS Yes, Your Honor. Just two other points. I think my colleague kept referring to compliance versus completion. We're not trying to draw a distinction between the two. We're just saying Jones requires that the process be complete. The process is complete on the 45th day. On the 46th day, he can bring his case. The — there was some suggestion that there's no completion until the decision issues. The regulation could have been written that way. It could have — and that would have provided the notice to the prisoner that would have satisfied the Ross issues that are presented here. It might present other Ross issues. It might present other objections and challenges that are not here. But that regulation at least would satisfy the notice requirement of Ross. It would potentially satisfy the completeness requirement of Jones, and we wouldn't be here, at least on — on these issues. I think — lastly, I'll just end with the — an extension of — of Judge Sullivan's comment that, you know, Ross itself was clear that the PLRA, quote, runs both ways. So if the prisoners have to live by the deadlines, the State and the State commission has to live by the deadlines. Thank you. Alito, can I ask a question? This is — this goes back to what I asked you before about the uniform. So I want to make sure I'm not confused about this. Your client filed a grievance about requesting a two-piece uniform. That's what you're requesting. On September 15th, within a week, his grievance is accepted. He's then told they're going to get him a two-piece uniform. A couple of weeks later, they get him a two-piece uniform from another institution, and they tell him he's going to get a new uniform sometime after that. On October 16th, he files a grievance, inquiring about the new uniform. He's told it's been ordered it'll be here next week, and then he voluntarily withdraws or avoids his grievance on October 16th, right? Correct, Your Honor. So how has he exhausted? He's exhausted. With respect to the uniform. Right. So he's exhausted because exhaustion doesn't go to the merits. So everything that the grievance system asked him to do, he's done. And if he has a claim, that he can bring it in district court. So the district court on remand may decide that the damages claim is mooted, that there may be other issues with respect to whether or not he can bring his claim, you know. But if the sole issue and the sole issue that the district court decided was that he didn't exhaust, that's incorrect, because he did exhaust, because he did everything that he was required to do. He withdrew his October 16th claim, right? Which claim did he exhaust? He certainly exhausted the first one. Well, the first one was only withdrawn. He exhausted because he made he used a grievance. Well, the first one was granted, right? And even if it's granted under Abney and other decisions from this circuit, that all he was required to do was utilize the administrative process, which he did. The administrative process worked to his favor. He got the uniform, right? So in this case, for example, it, you know, because of the two-piece uniform, perhaps sort of in our minds not giving rise to a large damages claim, maybe it's not as big a deal. But if you can imagine sort of, you know, ongoing sort of injury of a much larger sort of harm, then the even though the ultimately the grievance process results in a favorable decision for the prisoner, there's still a past claim for damages, for damages that accrued prior to the the the acceptance of the grievance. And in this case, not only are there damages prior to the acceptance of the grievance, there are damages running after the acceptance of the grievance because he wasn't given the full measure of what he was entitled to until four months after his first grievance. So you're, so the theory is that under Abney, he, he filed a grievance, it was granted. There was an implementation failure with regard to that grievance because he wasn't afforded the relief he'd asked, the jumpsuit. He wasn't required, there was no other mechanism that required him with regard to that grievance to do anything else. So he had exhausted, damages may be minimal if we're just talking about the delay of a month in getting the jumpsuit, but, but he exhausted the grievance. He exhausted the grievance because, right, on the first grievance. And so the withdrawal of the grievance doesn't make any difference to that. It doesn't make any difference. You can view it, you could view it as two separate events, but we focus on the first grievance as, as Judge, you did. I don't get it. It seems to me that he got, he grieved about, he wanted a two-piece prison uniform, right? Or he wanted to be able to wear a sweatshirt, right? And he was told, you're right, we'll get you a two-piece uniform. A week or so later, they get him a two-piece uniform. And they promised to get him a new one after, you know, that they'll, they'll make up for him. And he contends that the, the temporary uniform they got him was not sort of fully satisfactory. And so that even though technically they gave him sort of a borrowed uniform from, from another prison, that the full compliance was not until four months later when they got him in the actual uniform. And that's, and, and again, if we're just focusing on exhaustion, the claim is exhausted because. But why isn't it a new grievance? The jumpsuit was not acceptable. That grievance he won. Because. The two-piece accommodation also turns out not to be acceptable. And so that requires a new grievance. And he files a new grievance. Because the, under Abney, the, the, the compliance was not satisfactory. And he doesn't have to regrieve the original grievance. Okay. Thank you, Your Honor. All right. Thank you.